❑ Original ❑

**CLERK'S OFFICE**
**A TRUE COPY**
Apr 22, 2022
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Wisconsin

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
information about the location of the cellular telephone )
assigned call numbers (646) 460-7019, whose service )
provider is AT&T Wireless, as further described in Attachment )
A. )

Case No. 22-M-436 (SCD)

Matter No. 2021R00182

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A. Over which this Court has jurisdiction pursuant to 18 U.S.C. §§ 2703 and 2711 and Federal Rule of Criminal Procedure 41.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before 5-6-22 _____ *(not to exceed 14 days)*
❑ in the daytime 6:00 a.m. to 10:00 p.m. ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Honorable Stephen C. Dries _____ .
*(United States Magistrate Judge)*

☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❑ for _____ days *(not to exceed 30)* ☑ until, the facts justifying, the later specific date of _____ 11/18/2022 _____ .

Date and time issued: 4-22-22 2:05 pm _____

*Judge's signature*

City and state:   Milwaukee, Wisconsin _____

Honorable Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

## Certification

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

### Matter Number 2021R00182

1.      Records and information associated with the cellular device assigned call number **(646) 460-7019**, (referred to herein and in Attachment B as "the **TARGET CELL PHONE**"), that is in the custody or control of AT&T (referred to herein and in Attachment B as the "Service Provider"), a wireless communications service provider that is headquartered at 11760 US Highway 1, Ste. 600 North Palm Beach, FL 3340.

2.      The **TARGET CELL PHONE**.

**ATTACHMENT B**

**Particular Things to be Seized**

**Matter Number 2021R00182**

**I.      Information to be Disclosed by the Service Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Service Provider, including any information that has been deleted but is still available to the Service Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Service Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

a.   The following subscriber and historical information about the customers or subscribers associated with the **TARGET CELL PHONE** for the period from February 1, 2021 to present:

i.   Names (including subscriber names, usernames, and screen names);

ii.   Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

iii.   Local and long-distance telephone connection records;

iv.   Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

v.   Length of service (including start date) and types of service utilized;

vi.   Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number

("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address);

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the **TARGET CELL PHONE**, including:

(A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

(ii) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received), as well as per-call measurement data (also known as "real-time tool" or "RTT").

b. Information associated with each communication to and from the **TARGET CELL PHONE** for a period of 30 days from the date of this warrant, including:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii. Source and destination telephone numbers;

iii. Date, time, and duration of communication; and

iv. All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the **TARGET CELL PHONE** will connect at the beginning and end of each communication, as well as per-call measurement data (also known as "real-time tool" or "RTT").

The Court has also issued an order pursuant to 18 U.S.C. § 3123, dated today, for such information associated with the **TARGET CELL PHONE**.

c. Information about the location of the **TARGET CELL PHONE** for a period of 30 days, during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Service Provider, the Service Provider is required to disclose the Location Information to the government. In addition, the Service Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the **TARGET CELL PHONE** on the Service Provider's network or with such other reference points as may be reasonably

available, and at such intervals and times directed by the government. The government shall compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

**II.**  This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

**III.    Information to be Seized by the Government**

All information described above in Section I that constitutes evidence and instrumentalities of distribution and possession with intent to distribute controlled substances and conspiracy to distribute and possess with the intent to distribute controlled substances, violations of Title 21 United States Code Sections 841(a)(1) and 846, have been committed by "Li", Shawn SENTER, Austin MISURACO, and other known and unknown individuals during the period of February 1, 2021 to present.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Service Provider in order to locate the things particularly described in this warrant.



CLERK'S OFFICE
A TRUE COPY
Apr 22, 2022
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) |
| information about the location of the cellular telephone assigned call numbers (646) 460-7019, whose service provider is AT&T Wireless, as further described in Attachment A. | ) ) ) ) |

Case No. **22-M-436 (SCD)**

Matter No. 2021R00182

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A. Over which this Court has jurisdiction pursuant to 18 U.S.C. §§ 2703 and 2711 and Federal Rule of Criminal

located in the _____ District of _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) & 846 | Distribute and possession with intent to distribute controlled substances, and conspiracy to distribute and possess with the intent to distribute controlled substances. |

The application is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

☑ Delayed notice of _____ days *(give exact ending date if more than 30 days:* 11/18/2022 *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

DCI SA Mitchell G. Ward

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
telephone *(specify reliable electronic means)*.

Date: 4/22/22

*Judge's signature*

City and state: Milwaukee, Wisconsin          Honorable Stephen C. Dries, U.S. Magistrate Judge

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**
**MATTER NUMBER 2021R00182**

I, Mitchell G Ward, being first duly sworn, hereby depose and state as follows:

**<u>INTRODUCTION AND AGENT BACKGROUND</u>**

1.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call numbers **(646) 460-7019**   (the "**TARGET CELL PHONE**"), with listed subscriber unknown, whose service provider is AT&T ("Service Provider") a wireless telephone service provider headquartered at 11760 US Highway 1, Ste. 600 North Palm Beach, FL 3340. The **TARGET CELL PHONE** is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2.      In this application, the United States seeks (1) historical cell-site location information; (2) historical precision location information; (3) prospective, real-time cell-site location information; (4) prospective, real-time precision location information (i.e., E-911 Phase II data and GPS); and (5) subscriber information and other historic non-content records and information.

3.      Because this warrant application seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), I also make this affidavit in support of an application by the United States of America for an order pursuant to 18 U.S.C §§ 3122 and 3123, authorizing the installation and use of pen registers and trap and trace devices ("pen-trap devices") to record, decode, and/or capture dialing,

routing, addressing, and signaling information associated with each communication to or from the **TARGET CELL PHONE**.

4.      I am a state certified law enforcement officer employed as a Special Agent with the Wisconsin Department of Justice, Division of Criminal Investigation, (DCI) and have been a sworn officer in the State of Wisconsin for over 29 years.  I am currently assigned to DCI's Milwaukee Field Office, Narcotics Bureau.  I am also a federally deputized task force officer for the United States Postal Inspection Service ("USPIS").  As such, I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations of and to make arrests for federal felony offenses.

5.      I have participated in numerous complex narcotics investigations which involved violations of state and federal controlled substances laws and money laundering laws including Title 21, United States Code, Sections 841(a)(1), 843(b) and 846, and Title 18, United States Code, Sections 1956 and 1957, and other related offenses. I have had both formal training and have participated in numerous complex drug trafficking investigations, including ones using wiretaps. More specifically, my training and experience includes the following:

a.      I have utilized informants to investigate drug trafficking.  Through informant interviews, and extensive debriefings of individuals involved in drug trafficking, I have learned about the manner in which individuals and organizations distribute controlled substances in Wisconsin and throughout the United States;

b.      I have also relied upon informants to obtain controlled substances from dealers, and have made undercover purchases of controlled substances;

c.      I have extensive experience conducting street surveillance of individuals engaged in drug trafficking.  I have participated in the execution of numerous search warrants where controlled substances, drug paraphernalia, and drug trafficking records were seized;

d.      I am familiar with the appearance and street names of various drugs, including marijuana, heroin, cocaine, cocaine base (unless otherwise noted, all references to crack cocaine in this affidavit is cocaine base in the form of crack cocaine), ecstasy, and methamphetamine. I am familiar with the methods used by drug dealers to package and prepare controlled substances for sale. I know the street values of different quantities of the various controlled substances;

e.      I am familiar with the language utilized over the telephone to discuss drug trafficking, and know that the language is often limited, guarded, and coded;

f.      I know that drug traffickers often use electronic equipment and wireless and land line telephones to conduct drug trafficking operations;

g.      I know that drug traffickers commonly have in their possession, and at their residences and other locations where they exercise dominion and control, firearms, ammunition, and records or receipts pertaining to such;

h.      I have been assigned to court-authorized wiretaps and have been trained to operate the equipment utilized to conduct such operations;

i.      I know that drug traffickers often put their telephones in nominee names in order to distance themselves from telephones that are utilized to facilitate drug trafficking; and

j.      I know that drug traffickers often use drug proceeds to purchase assets such as vehicles, property, and jewelry. I also know that drug traffickers often use nominees to purchase and/or title these assets in order to avoid scrutiny from law enforcement officials.

6.      I have also participated in investigations involving the use of historical and prospective location information to identify targets, map patterns of travel, corroborate other evidence, and apprehend persons to be arrested. On numerous occasions, this electronic evidence has provided proof of the crimes being investigated and corroborated information already known or suspected by law enforcement. During the course of my investigations, I have regularly used electronic evidence relating to the commission of criminal offenses, including intent, motive, manner, means, and the identity of co-conspirators.

7.      The facts in this affidavit come from my personal observations, my training and experience, my review of documents, and information obtained from other agents and witnesses.

This affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

8.     I am currently participating in an investigation of a large-scale drug trafficking organization ("DTO") in which Shawn SENTER (a/k/a "Shaggy"), herein referred to as the SENTER, is a local source of controlled substances for the Milwaukee DTO.  The investigation has discovered SENTER's source of controlled substance appears to be an individual called "Li" from New York City, NY.  I am familiar with the facts and circumstances regarding this investigation as a result of my personal participation in this investigation, and my knowledge of: (a) consensually recorded telephone conversations and face-to-face meetings; (b) reports prepared by, and information obtained from, other federal, state, and local law enforcement agents and officers, all of whom I believe to be truthful and reliable; (c) court authorized forensic extractions of DTO members' cellular phones; and (d) information obtained from cooperating citizen witnesses, confidential sources, and defendants, whose reliability is established herein.    This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

9.     Based on the facts set forth in this affidavit, there is probable cause that the possible crimes distribution and possession with intent to distribute controlled substances and conspiracy to distribute and possess with the intent to distribute controlled substances, violation of Title 21 United States Code Sections 841(a)(1) and 846, have been committed by "Li", Shawn SENTER, Austin MISURACO, Quentin MOORE, Andrew MISURACO, Montrice HOOD and other known and unknown individuals. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations and will lead to the identification of individuals who are engaged in the commission of these offenses.

## JURISDICTION

10.     The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, see 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

11.     Case agents were made aware of a Milwaukee DTO led by Austin MISURACO, also known as "stew". Austin MISURACO utilizes a variety of communication applications to distribute narcotics including Instagram, Signal, SnapChat and others. Austin MISURACO has used account usernames such as bestplug-414, 414Plug, milwaukee1414, bestplug-414 and Best Plug. In addition to distributing cocaine, MISURACO is also involved in distributing large amounts of Acid, MDMA (Molly), Phycobilin (Mushrooms), THC Vape Cartridges, THC and THC concentrate (Wax). Several other members of Austin MISURACO's DTO have been identified as well as street level dealers associated with the Wild 100's street gang. During the investigation, case agents learned Austin MISURACO received acid, MDMA, and cocaine from Shawn SENTER. Austin MISURACO then used several social media platforms to distribute narcotics on his own. Additionally, Austin MISURACO directed members of the DTO, including Montrice HOOD, Andrew MISURACO, and Quentin MOORE to deliver narcotics to customers throughout the greater Milwaukee Area.

12.     In April of 2021, MISURACO was arrested by the city of Milwaukee Police Department. Law enforcement obtained a state search warrant for Austin MISURACO's Apple iPhone 11 and compiled an electronic report after the examination of Austin MISURACO's phone. Case agents reviewed the extraction reports created by Officer Somers. Upon reviewing the

extraction report, the report showed Austin MISURACO was trafficking cocaine, MDMA, marijuana, prescription drugs, acid and mushrooms. Austin MISURACO used various messaging applications such as Snapchat, Telegram and Signal to facilitate the sales and distribution of narcotics in the greater Milwaukee area. Austin MISURACO regularly posted price lists and photos of different narcotics on social media. Case agents reviewed numerous messages related to drug trafficking between Austin MISURACO, "Shaggy" (SENTER), Quentin MOORE, Andrew MISURACO, and Montrice HOOD.

13.     Case agents identified SENTER as "Shaggy" based upon information obtained from law enforcement databases and data recovered from Austin MISURACO's phone. SENTER has an extensive criminal history in Illinois consisting of multiple narcotics convictions. An examination of the electronic messaging between Austin MISURACO and SENTER recovered from Austin MISURACO's iPhone show SENTER as one of Austin MISURACO's suppliers of controlled substances and firearms.

14.     In early March of 2022, case agents spoke with CI-1 regarding this investigation. C1-1 was aware the Shawn SENTER was planning to travel to Chicago to pick up an undetermined number of kilograms of MDMA and Ketamine. CI-1 stated that SENTER typically meets his source at hotel in Chicago, Illinois where the transaction takes place. CI-1 stated that SENTER typically drives his 2019 Toyota 4Runner to Chicago and drives the narcotics back to Wisconsin where he distributes the drugs.

15.     CS-1 is credible and reliable because CS-1 has provided intelligence concerning drug trafficking activities for SENTER that have been independently corroborated through queries of law enforcement databases, law enforcement investigations and information gathered from MISURACO's phone as well as CS-1's phone by law enforcement. CS-1 has also made

statements against his/her own penal interests. CS-1 has no felony convictions. CS-1 has no arrests or convictions relating to dishonesty. CS-1 is cooperating with law enforcement in exchange for consideration regarding felony drug trafficking offenses.

16.     On March 10, 2022, case agents stopped SENTER at a gas station located in Kenosha Wisconsin and executed a federal search warrant upon his 2019 Toyota 4Runner (WI AFB 6486). Case agents recovered approximately 23 kilograms of Ketamine, 3.5 kilograms of MDMA, SENTER's iPhone and other evidentiary items. Case agents also executed a search warrant at SENTER's home on March 10, 2022. Case agents recovered a Glock 17 with a "Glock Switch" making the pistol a fully automatic machinegun, over $7,000, approximately 50 grams of MDMA, 5 pounds of high-grade marijuana and over 800 pills of MDMA and LSD.

17.     On March 10, 2022, case agents conducted an in-custody interview of Shawn SENTER. SENTER stated that he obtains kilograms of MDMA from an Asian male living in New York, NY that SENTER knows as "Li." SENTER has been obtaining narcotics from "Li" for the past three years. SENTER identified "Li's" phone number as **(646) 460-7019**. SENTER stated that he arranges the transactions by phone, contacting "Li" who then sends the drugs to Chicago with a currier. SENTER then gives bulk cash to the currier who brings the money to "Li." SENTER stated that he gave "Li's" currier $200,000 in cash for the load of narcotics case agents recovered from his auto. SENTER stated that this transaction occurred at the Godfrey Hotel in Chicago. SENTER stated that he chooses a different hotel each time he picks up narcotics.

18.     Additionally, on March 10, 2022, Shawn SENETR did provide written consent to case agents allowing a search of his iPhone. A search of the SENTER's phone shows an extensive history of communication with "Li" at the number of **(646) 460-7019 (TARGET CELL PHONE)** beginning in February 2021. The extraction revealed over one hundred incoming and outgoing

voice calls and hundreds of text messages between SENTER and "Li" via the Signal messaging application. Case agents located messages from SENTER to "Li" on March 5, 2022, "I'll have like 300k" and "maybe more." Case agents also located incoming messages from "Li" providing prices for narcotics, such as 26,000 for "K" and 16,000 for "M". Based on the investigation into SENTER and the DTO, case agents believe "K" refers to Ketamine and "M" refers to MDMA, which is consistent with the controlled substances investigators seized on March 10, 2022 from SENTER. There are message strings from January and February that describe multiple kilograms shipments from "Li" to SENTER that coincide with SENTER's description of how he obtains narcotics from "Li."

19.     On April 19, 2022, case agents spoke with SENTER under a proffer agreement. SENTER stated that he has been in contact with "Li" at the **TARGET CELL PHONE**. SENTER stated that within the last two weeks, he spoke to "Li" twice. During one of the conversations, SENTER told "Li" that "someone had been arrested." SENTER stated that "Li" had also asked about SENTER's drug debt. In a previous interview, SENTER told case agents that he owes "Li" $100,000 for narcotics that SENTER received on consignment or "fronted" to SENTER.

20.     On April 21, 2022, Honorable Judge Stephen C. Dries authorized the electronic surveillance of **(646) 460-7019** (22-M-431). While case agents were about to execute the warrant on Verizon Wireless, they determined an error with the service provider. The correct service provided for the **TARGET CELL PHONE** is AT&T. Case agents verified with law enforcement databases that AT&T was in fact the service provider for the **TARGET CELL PHONE**.

21.     Case agents believe SENTER's drug source "Li" is using the **TARGET CELL PHONE** to facilitate communications with known and unknown co-conspirators. Case agents further believe "Li" has made and will continue to make frequent visits to locations in which he

stores and distributes narcotics for the DTO. Case agents believe that the historical and prospective monitoring of the **TARGET CELL PHONE**'s location will assist in identifying potential sources of supply, distributors, and locations associated with the DTO. I believe the **TARGET CELL PHONE**, whose service provider is AT&T ("Service Provider"), a wireless telephone service provider, continues to contain valuable information that could be used as evidence for the possible crimes of distribution and possession with intent to distribute controlled substances and conspiracy to distribute and possess with the intent to distribute controlled substances, violations of Title 21, United States Code, Sections 841 and 846.

## TECHNICAL BACKGROUND

22.     Based on my training and experience, I know that Service Provider can collect historical and prospective cell-site data and historical and prospective E-911 Phase II data about the location of the **TARGET CELL PHONE**, including by initiating a signal to determine the location of the **TARGET CELL PHONE** on Service Provider's network or with such other reference points as may be reasonably available.

### Cell-Site Data

23.     In my training and experience, I have learned that the Service Provider is a company that provides cellular communications service to the general public. I also know that providers of cellular communications service have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half-mile or more apart, even in urban areas,

and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

24.     Based on my training and experience, I know that the Service Provider can collect cell-site data on a historical and prospective basis about the **TARGET CELL PHONE**. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as the Service Provider typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

**E-911 Phase II / GPS Location Data**

25.     I know that some providers of cellular telephone service have technical capabilities that allow them to collect and generate E-911 Phase II data, also known as GPS data or latitude-longitude data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers.

26.     As discussed above, cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural

areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.

27.     Affiant also knows that certain wireless providers, such as Service Provider, can provide precision location information, also known as estimated location records or historical handset location data, on both a historical and prospective basis. Each provider refers to its proprietary estimates of a cellular device's location differently. This information, however, is sometimes referred to as geolocation information (PING), Network Event Location System (NELOS) data, Global Positioning System (GPS) data, cell tower triangulation or trilateration, round-trip time or real-time tool (RTT), per-call measurement data (PCMD), historical E911 data, or precision measurement information.

28.     Based on Affiant's training and experience, Affiant knows that Service Provider also can collect per-call measurement data, which Service Provider also refers to as the "real-time tool" ("RTT").  RTT data estimates the approximate distance of the cellular device from a cellular tower based upon the speed with which signals travel between the device and the tower.  This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

29.     Accordingly, cell-site data is typically less precise that E-911 Phase II data. Based on my training and experience, I know that the Service Provider can collect E-911 Phase II data about the location of the **TARGET CELL PHONE** including by initiating a signal to determine the location of the **TARGET CELL PHONE** on the Service Provider's network or with such other reference points as may be reasonably available.

**Pen-Trap Data**

30.     Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it. Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers – as transmitted from a cellular device to a cellular antenna or tower – can be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

## Subscriber Information

31.     Based on my training and experience, I know that wireless providers such as the Service Provider typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as the Service Provider typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business.

32.     In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify **TARGET CELL PHONE**'s user or users, the locations of that user or users, the patterns of that user or users, and

may assist in the identification of other co-conspirators. A frequency analysis of the telephone communications between DAVIS, GRAHAM, PINKARD and others known and unknown individuals is material, in that it can establish whether the calls from the **TARGET CELL PHONE** are a deviation from their normal patterns of communication. The frequency analysis of the locations associated with the **TARGET CELL PHONE** can establish whether the locations are deviations or consistent with normal patterns. This information is relevant to show whether DAVIS, GRAHAM, PINKARD and others acted-in-concert, by establishing the nature and extent of their relationship, the existence and scope of the conspiracy, the pattern of their communications, their patterns of travel, and any deviations from those patterns.

## AUTHORIZATION REQUEST

33.    Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

34.    I further request that the Court direct the Service Provider to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.

35.    I also request that the Court direct the Service Provider to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the **TARGET CELL PHONE** on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.  The government shall reasonably compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

36.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice till November 18, 2022, pursuant to the Omnibus signed by Honorable Judge Stephen C. Dries on November 18, 2021. This investigation is expected to remain covert at least until then, so disclosing the warrant would alert targets or subjects about the existence of a federal investigation. Case agents will continue to request the same notification deadline for all warrants in this investigation, so that the notifications can be coordinated or extended as necessary. A single notification date will reduce the administrative burden on case agents and the Court, minimize the risks of disclosure, and promote judicial economy. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the **TARGET CELL PHONE** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1).

37.     As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

38.     Because the warrant will be served on the Service Provider, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night. I further request that the Court authorize

execution of the warrant at any time of day or night, owing to the potential need to locate the

**TARGET CELL PHONE** outside of daytime hours.

**ATTACHMENT A**

**Property to Be Searched**

**Matter Number 2021R00182**

1.     Records and information associated with the cellular device assigned call number

**(646) 460-7019**, (referred to herein and in Attachment B as "the **TARGET CELL PHONE**"), that

is in the custody or control of AT&T (referred to herein and in Attachment B as the "Service

Provider"), a wireless communications service provider that is headquartered at 11760 US

Highway 1, Ste. 600 North Palm Beach, FL 3340.

2.     The **TARGET CELL PHONE**.

**ATTACHMENT B**

**Particular Things to be Seized**

**Matter Number 2021R00182**

**I.      Information to be Disclosed by the Service Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Service Provider, including any information that has been deleted but is still available to the Service Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Service Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

a.   The following subscriber and historical information about the customers or subscribers associated with the **TARGET CELL PHONE** for the period from February 1, 2021 to present:

   i.   Names (including subscriber names, usernames, and screen names);

   ii.   Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii.   Local and long-distance telephone connection records;

   iv.   Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v.   Length of service (including start date) and types of service utilized;

   vi.   Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number

("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address);

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the **TARGET CELL PHONE**, including:

(A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

(ii) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received), as well as per-call measurement data (also known as "real-time tool" or "RTT").

b. Information associated with each communication to and from the **TARGET CELL PHONE** for a period of 30 days from the date of this warrant, including:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii. Source and destination telephone numbers;

iii. Date, time, and duration of communication; and

iv. All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the **TARGET CELL PHONE** will connect at the beginning and end of each communication, as well as per-call measurement data (also known as "real-time tool" or "RTT").

The Court has also issued an order pursuant to 18 U.S.C. § 3123, dated today, for such information associated with the **TARGET CELL PHONE**.

c. Information about the location of the **TARGET CELL PHONE** for a period of 30 days, during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Service Provider, the Service Provider is required to disclose the Location Information to the government. In addition, the Service Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the **TARGET CELL PHONE** on the Service Provider's network or with such other reference points as may be reasonably available,

and at such intervals and times directed by the government. The government shall compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

**II.** This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

### III.   Information to be Seized by the Government

All information described above in Section I that constitutes evidence and instrumentalities of distribution and possession with intent to distribute controlled substances and conspiracy to distribute and possess with the intent to distribute controlled substances, violations of Title 21 United States Code Sections 841(a)(1) and 846, have been committed by "Li", Shawn SENTER, Austin MISURACO, and other known and unknown individuals during the period of February 1, 2021 to present.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Service Provider in order to locate the things particularly described in this warrant.